RECORD NO. 12-4108

In The

# United States Court of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

## v.

## ARTURO CASTELLANOS,

*Defendant – Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## AT GREENSBORO

———————

### PETITION FOR REHEARING *EN BANC*

———————

**Michael E. Archenbronn**
**LAW OFFICE OF MICHAEL E. ARCHENBRONN**
**Post Office Box 30181**
**Winston-Salem, North Carolina  27130**
**(336) 725-1272**

*Counsel for Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT OF GROUND FOR
REHEARING EN BANC ...............................................................................1

STATEMENT OF THE CASE ..............................................................................1

ARGUMENT FOR REHEARING EN BANC ......................................................2

    STATEMENT OF THE FACTS RELEVANT TO REHEARING ...............2

    DISCUSSION...........................................................................................7

        DID THE PANEL ERR BY HOLDING THAT APPELLANT,
        ARTURO CASTELLANOS FAILED TO PROVE THAT HE
        WAS USING WILMER CASTENADA WHO WAS THE
        SHIPPER AND INTENDED RECIPIENT OF THE FORD
        EXPLORER THAT WAS SEARCHED AND THUS HAD NO
        LEGITIMATE EXPECTATION OF PRIVACY .................................7

        DID THE DISTRICT COURT COMMIT ERROR BY
        DENYING ARTURO CASTELLANOS' MOTION TO
        SUPPRESS THE EVIDENCE FOUND IN THE FORD
        EXPLORER WHEN IT HELD THAT ARTURO
        CASTELLANOS HAD NO LEGITIMATE EXPECTATION
        OF PRIVACY IN THE FORD EXPLORER SINCE IT WAS
        BEING SHIPPED BY A COMMON CARRIER .............................10

CONCLUSION ....................................................................................................13

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Coolidge v. New Hampshire*,
    403 U.S. 443 (1971)...................................................................10

*Ex Parte Jackson*,
    96 U.S. 727, 24 L. Ed. 877 (1878) .............................................11

*Oliver v. United States*,
    466 U.S. 170, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984) ............10

*United States v. Crowder*,
    588 F.3d 929 (7th Cir. 2009) ..................................................7, 11

*United States v. Jacobsen*,
    466 U.S. 109, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984) ...................11, 12, 13

*United States v. Van Leeuwen*,
    397 U.S. 249, 90 S. Ct. 1029, 25 L. Ed. 2d 282 (1970) .........................11, 12

**CONSTITUTIONAL PROVISION**

U.S. Const. amend. IV.......................................................1, 10, 11, 12

**STATUTES**

18 U.S.C. § 841(b)(1)(A) ...........................................................1

21 U.S.C. § 846...........................................................................1

**RULE**

Fed. R. App. P. 35 ......................................................................1

## PRELIMINARY STATEMENT OF GROUND FOR
## REHEARING EN BANC

Pursuant to Rule 35 of the Federal Rules of Appellate Procedure, Appellant Arturo Castellanos petitions this Court for rehearing en banc of the panel published decision dated May 29, 2013 (cited herein as "Slip Op.") on the following ground:

The Appellant believes the issued raised is one of exceptional importance as it raises a serious constitutional issue as the Panel decision in is conflict with long standing Fourth Amendment precedent as pointed both in this petition and by the dissent in the opinion.

## STATEMENT OF THE CASE

Arturo Castellanos ("Appellant") was indicted by the grand jury of the Middle District of North Carolina on February 1, 2011, for conspiracy to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 841(b)(1)(A).  JA 8-9.  On June 3, 2011, Arturo Castellanos, through his counsel, filed a motion to suppress evidence seized at the time of his arrest.  JA 10-13.  A hearing on Arturo Castellanos's motion to suppress was held on July 06, 2011.  JA 31.  After hearing the evidence, the court denied Arturo Castellanos's motion to suppress finding that Arturo Castellanos had no legitimate expectation of privacy once the Ford Explorer was placed with a common car carrier and when

Arturo Castellanos gave a false address.  JA 72.  On July 18, 2011, Arturo
Castellanos entered a plea of guilty and on December 2, 2011, he was sentenced to
120 months imprisonment, followed by five years of supervised release.  JA 74-
79.  Arturo Castellanos gave timely Notice of Appeal to this Court on February 13,
2012 of his sentence judgment entered on  February 3, 2012.  JA 80-81.

### ARGUMENT FOR REHEARING EN BANC

STATEMENT OF THE FACTS RELEVANT TO REHEARING

On June 3, 2011, Arturo Castellanos, through his counsel, filed a motion to
suppress evidence seized at the time of his arrest.  JA 10-14.  A hearing on Arturo
Castellanos's motion to suppress was held on July 06, 2011.  JA 31.  At the
hearing the government called Captain Kevin Roberts of the Reeves County
Sheriff's Office as a witness.  JA 33.

Captain Roberts testified that on September 20, 2010, he initiated contact
with Richard Bledsoe, an employee of Direct Auto Shippers (DAS) Auto Carriers,
at the Flying J Truck Stop in Pecos, Texas.  JA 35-36.  Captain Roberts told Mr.
Bledsoe that he was curious about the Ford Explorer that was being transported on
his carrier.  JA 36.  Captain Roberts noticed that the vehicle appeared to be at least
10 years old, with a dealership placard on the back.  *Id.*  Captain Roberts obtained
from Mr. Bledsoe the bill of lading for the vehicle which showed a Wilmer
Castenada as both the shipper and receiver of the vehicle.  JA 36-37.  The shipping

address was listed as 17905 Broadway, Gardenia, California.  JA 37.  The

destination address on the bill of lading was 135 Montlieu Avenue, Greensboro,

North Carolina.  *Id*.  When Captain Roberts called the businesses, representatives

from both companies stated they were not expecting the delivery of a Ford

Explorer and they did not know anyone by the name of Wilmer Castenada.  JA 37-

38.  Captain Roberts then asked Mr. Bledsoe for consent to climb onto the car

carrier and search the Ford Explorer.  JA 38.  Mr. Bledsoe agreed to his request to

the search.  *Id*.  Upon entering the vehicle, Captain Roberts observed that the

interior of the vehicle had "grass and stuff" and he noticed a strong odor of

"bondo."  JA 38-39.  While inspecting the floorboard behind the seats, he saw that

it appeared that the second row of seats had been removed.  JA 39.  He hit the

floor board beneath the seats just above the gas tank and noticed an inconsistency

in the sound from the floorboard.  *Id*.  Captain Roberts then inserted a fiber optic

scope into the gas tank and saw what he determined to be bricks of cocaine inside

heat-sealed plastic food saver bags.  JA 39-40.  The vehicle was subsequently

taken to the Reeves County Sheriff's Department and the gas tank to the vehicle

was removed.  JA 40-41.  Twenty-three 23 kilogram-sized bricks of cocaine

hydrochloride was recovered from the tank.  JA 41.  After recovery of the

suspected cocaine, Captain Roberts made numerous attempts between September

20, 2010, and September 27, 2010, to reach Wilmer Castenada at the number that

3

had been provided on the bill of lading. JA 42-43. On September 27, 2010, Captain Roberts received a call from DAS Auto Carriers advising that a person who identified himself as Wilmer Castenada was on the telephone line inquiring about his vehicle. JA 43. DAS Auto was able to forward Castenada's call to Captain Roberts. JA 43-44. They also provided the officer with the telephone number Castenada had provided. *Id.* Captain Roberts spoke with Castenada and identified himself as "Kevin" with B & B Wrecker Service in Pecos, Texas. JA 44. Captain Roberts told Castenada that the car carrier was towed after the driver had been arrested. JA 44. He told Castenada he would have to travel to Texas to pick up his vehicle. Castenada stated he would make arrangements to pick up the vehicle. *Id.* On September 29, 2010, Captain Roberts received a call from a person stating he was Wilmer Castenada. JA 45. Castenada asked what he needed to bring in order to take possession of the vehicle. *Id.* Captain Roberts (still posing as "Kevin" from B & B Wrecker Service) told Castenada he would need to bring a driver's license and the title to the vehicle proving ownership. *Id.*

On October 1, 2010, Captain Roberts was notified by Sheriff's Department officials that B & B Wrecker Service had called to advise that a subject using the name "Arturo" had called and asked for someone to pick him up at Wal-Mart and give him a ride to B & B to pick up his vehicle. JA 46. Due to the large amount of cocaine, Captain Roberts suspected that Arturo may not be traveling alone and

4

thus requested other officers in the area to check local motels to determine if anyone from North Carolina had checked in.  JA 47-48.  Having grown impatient waiting for a ride to B & B Wrecker Service, Arturo called the police department in Reeves County and requested a ride to B & B Wrecker Service.  JA 49.  An officer arrived and picked up Arturo (who was later determined to be the appellant, Arturo Castellanos) at an Auto Zone located near Wal-Mart.  *Id*.  The officer who made the pick up was soon notified that the Arturo Castellanos was the subject of a drug investigation and that he should be transported to the Sheriff's Department in Reeves County.  *Id*.  Arturo Castellanos was taken into custody at the Sheriff's Department and searched.  The search of his person resulted in the seizure of the title to the Ford Explorer, a small piece of paper containing telephone numbers for Captain Roberts ("Kevin"), B & B Wrecker Service, Greyhound, DAS Auto Carriers, the vehicle tracking number and a telephone number for Bobby's Towing in North Carolina.  JA 55.  The search also revealed that Arturo Castellanos was from California.  JA 49-50.  Since the officers suspected Arturo may not have been traveling alone and was from out of state, the checked local hotels to find out if anyone from California had registered the previous night.  Investigation showed that someone by the name of Raul Hernandez had checked in the previous night to the local Motel 6 and the registration receipt listed two occupants in Hernandez's room.  JA 50.  The Motel

6 clerk further advised that an hour earlier, Raul Hernandez had checked out and left two duffle bags in the lobby and stated that he was going to the nearby Wal-Mart. When Raul Hernandez returned, he was detained and questioned but refused to answer any questions. Officers then searched the room that he had rented. A search of the motel room resulted in the seizure of a piece of paper with the name of Arturo Castellanos printed on it. JA 53. A subsequent search of the duffle bags which contained clothing similar in size to Arturo Castellano revealed a cellular telephone which was assigned the telephone number of 336-263-7145. This was the same telephone number as the one the person using the name Wilmer Castenada had used to contact Captain Roberts when he was acting as an employee of B&B Wrecker service. JA 58.

When questioned by Captain Roberts, Arturo Castellanos stated that he had purchased the Explorer from a Wilmer Castenada in North Carolina which is why he had title to the Explorer, and that Mr. Castenada had called him and told him that he needed to come to Pecos, Texas to pick up the vehicle drive it to North Carolina where he could pay for it. JA 56. When Captain Roberts indicated that he did not believe his story, Arturo Castellanos stated that he did not wish to answer any additional questions and the interview was terminated. JA 57. When questioned on cross-examination during the suppression, Captain Roberts stated it was his belief that Arturo Castellanos and Wilmer Castenada were the same

individual.  JA 31.  Arturo was then arrested for conspiracy to distribute cocaine

hydrochloride.  Raul Hernandez's case, however, was dropped.

DISCUSSION

DID THE PANEL ERR BY HOLDING THAT APPELLANT, ARTURO
CASTELLANOS FAILED TO PROVE THAT HE WAS USING WILMER
CASTENADA WHO WAS THE SHIPPER AND INTENDED RECIPIENT OF
THE FORD EXPLORER THAT WAS SEARCHED AND THUS HAD NO
LEGITIMATE EXPECTATION OF PRIVACY?

In its decision denying Arturo Castellanos' motion to suppress, the district

court held that once an automobile "had been given over to a common carrier with

addresses that were ascertained to be false addresses" then "[t]here was no

legitimate expectation of privacy *at that point*" (emphasis added).  The obvious

implication by the district court's ruling was that Wilmer Castenada who was the

listed shipper and recipient of the Ford Explorer had a legitimate expectation of

privacy and that Wilmer Castenada was actually Arturo Castellanos who was

simply going by the alias of Wilmer Castenada but that but he lost his legitimate

expectation of privacy at the point he turned the Explorer over to a common

carrier and used what the court believed to be a false address.  To support its

ruling the district court made reference to the Seventh Circuit case of *United

States v. Crowder*, 588 F.3d 929, which as the court noted "basically says that

when somebody turns a vehicle over to a commercial carrier, they have no given

expectation of privacy in that vehicle."  JA 65.  Clearly, it was not a question as to

7

whether Arturo Castellanos had a legitimate expectation of privacy to the Ford

Explorer initially since the district court had no doubts from Captain Roberts'

testimony that Arturo Castellanos and Wilmer Constenada were the same person.

Nor did the government ever raise doubts that Arturo Castellanos and Wilmer

Castenada was not the same person.[1]  In fact it was this very theory upon which

the government rested its case in order to show that it was reasonable to infer that

Arturo Castellanos knew the drugs were in the Jeep though they were hidden from

plain view in the gas tank.  It was also likely for this reason that the government

_____

[1] This is further supported by the narrative in the Factual Basis prepared by the government with regard to DEA agent Razik's monitoring of activities at the Montlieu address in Greensboro, NC:

> On September 29, 2010, an employee at the Montlieu
> Avenue business notified Agent Razik that the Hispanic
> man had again come to the business inquiring about the
> Ford Explorer.  The employee advised that the man had
> presented a tracking number and a copy of the title for
> the Explorer.  Agent Razik went to the business and
> obtained a copy of the vehicles's title.  He also showed
> the two employees who spoke with the Hispanic man a
> photograph that was taken from the video footage at
> Four Season's Mall on September 26, 2010.  Both
> employees identified defendant AUTURO [sic]
> CASTELLANOS as the man who had been to the
> business between September 24 and September 29, 2010,
> inquiring about the Ford Explore.

Factual Basis, pp 9-10.

decided to drop the case against the co-defendant, Hernandez but proceed in its prosecution of Arturo Castellanos.

In its two-to-one decision, the panel, as with the district court, seemed to clearly agree that the one named Wilmer Casteneda who was both the shipper and intended recipient of the Ford Explorer, had a legitimate expectation of privacy. However, despite the evidence presented at the hearing and the government's factual basis presented at sentencing, the panel took the position *contrary* to the district court's and government's apparent position by ruling that there was no indication that Wilmer Castenada and Arturo Castellanos were same person and upon Arturo Castellanos' failure in the alternative to present a car title with his correct name on it, he had no legitimate expectation of privacy.  But as pointed out in Judge Davis's dissent, the evidence presented at the hearing showed that (1) Appellant appeared with the title to the vehicle; (2) Appellant insisted (and never denied or disclaimed) he was the purchaser/owner of the vehicle; and (3) Appellant possessed the phone assigned to the number which Roberts had been using to communicate with Appellant (who was posing as Wilmer Castenada) *supported* a finding that Appellant was Wilmer Constenada and thus the shipper and intended recipient of the Ford Explorer and thus had a legitimate expectation of privacy.  (*See* dissent, Slip Op, page 27, fn.13).  Judge Davis went on to remark with regard to the majority's finding, "[I]t wholly escapes me how this evidence

9

cuts *against* a finding, rather than *in support* of a finding, that at the time of the search of the vehicle, Appellant harbored an objectively reasonable expectation of privacy in the vehicle." *Id.* In sum, the Panel erred by taking a position that neither the government took in its arguments nor the district court took in its ruling which was that Arturo Castellanos failed to present sufficient evidence that he was Wilmer Castenada or in the alternative, that it was necessary for Arturo Castellanos to present a car title with his real name on it to support a finding that the had a legitimate expectation of privacy.

DID THE DISTRICT COURT COMMIT ERROR BY DENYING ARTURO CASTELLANOS' MOTION TO SUPPRESS THE EVIDENCE FOUND IN THE FORD EXPLORER WHEN IT HELD THAT ARTURO CASTELLANOS HAD NO LEGITIMATE EXPECTATION OF PRIVACY IN THE FORD EXPLORER SINCE IT WAS BEING SHIPPED BY A COMMON CARRIER?

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. This right protects a person's legitimate expectation of privacy. *See*, *e.g.*, *Oliver v. United States*, 466 U.S. 170, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984). Searches into areas where an individual has a legitimate expectation of privacy but are "conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well-defined exceptions..." *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455

10

(1971).  In Arturo Castellanos' case, law enforcement officers failed to obtain a search warrant prior to the search of the Explorer.  Absent any "specifically established and well-defined exception" the search of the Ford Explorer was unreasonable and therefore violated Castellanos' Fourth Amendment right under the United States Constitution.  Thus, the burden then shifted to the government to justify that such warrantless intrusions were legally reasonable based upon "a few specifically established and well-defined exceptions" to the warrant requirement.

In its decision to deny Arturo Castellanos' motion to suppress, the court ruled that based on the Seventh Circuit case of *United States v. Crowder*, once the Ford Explorer had been turned over to a common carrier and what it considered to be false addresses were given, all legitimate expectation of privacy was lost "*at that point*" (emphasis added).  JA 72.

While the facts are not in dispute, Arturo Castellanos contends that the district court erred in its legal conclusion.  The Supreme Court has long recognized that "[l]etters and other sealed packages" such as closed containers that are placed in the possession of a common carrier "are in the general class of effects in which the public at large has a legitimate expectation of privacy." *United States v. Jacobsen*, 466 U.S. 109, 114, 104 S. Ct. 1652, 1657, 80 L. Ed. 2d 85, 90 (1984); *United States v. Van Leeuwen*, 397 U.S. 249, 251, 90 S. Ct. 1029, 1031, 25 L. Ed. 2d 282, 285 (1970); *Ex Parte Jackson*, 96 U.S. 727, 733, 24 L. Ed.

11

877 (1878). In *Jacobsen*, Federal Express employees opened a package they were shipping for a customer that had been damaged by a forklift. Inside the package was a tube sealed in duct tape. After opening the tube, they noticed several zip-lock bags containing a white powdery substance. The employees then notified the local Drug Enforcement Administration who sent an agent who field-tested the substance. The test identified the substance as cocaine. In his case, Jacobsen filed a motion to suppress the cocaine, arguing that the search was illegal. While recognizing that such packages fell under the protection of the Fourth Amendment, the Court held in this case there was no violation since the independent actions taken by the Federal Express employees did not amount to government action. The Court noted however, that such packages do fall under the protection of the Fourth Amendment and such items "are in the general class of effects in which the public at large has a legitimate expectation of privacy" and that "warrantless searches of such effects are presumptively unreasonable." *Id*. at 114.

Thus, placing an item into the hands of a shipper does not, as the trial court in Arturo Castellanos's case concluded, diminish one's expectation of privacy in that item. Even if Arturo Castellanos' story regarding the purchase of the Explorer from Mr. Casteneda is not to be believed, nevertheless he is the one with the title to the vehicle. At no time did the driver of the auto carrier present Captain

12

Roberts with title to the Explorer or any other evidence that he had authority – apparent or otherwise – to grant consent for Captain Roberts to search the vehicle. Nothing in the Court's ruling in *Jacobsen* indicated that a correct name need be placed on the package or container for one to have a reasonable and legitimate expectation of privacy. Indeed the fact that one uses a false name simply further indicates that he wants and expects privacy both for himself and for the package or container he is shipping. Such expectation of privacy is no less reasonable simply because one uses a fictitious name to further maintain that expectation of privacy. And here, where no warrant was sought or issued for inspection, the Government must prove a specifically established and well-defined exception existed to justify the search. The evidentiary record is void of any such circumstances. Because the Government failed to identify any exception justifying the warrantless search, the trial court erred in denying Arturo Castellanos's motion to suppress.

## CONCLUSION

For the reasons stated above, the Appellant, Arturo Castellanos respectfully requests this Honorable Court grant his petition for rehearing en banc of the panel decision in this case.

13

Respectfully submitted,

<u>/s/ Michael E. Archenbronn</u>
Michael E. Archenbronn
LAW OFFICES OF
    MICHAEL E. ARCHENBRONN
Post Office Box 30181
Winston-Salem, North Carolina 27130
(336) 725-1272

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 11th day of June, 2013, I caused this Petition for

Rehearing *en banc* to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

Sandra J. Hairston
OFFICE OF THE U.S. ATTORNEY
101 South Edgeworth Street
Greensboro, North Carolina 27401
(336) 333-5351

*Counsel for Appellee*

/s/ Michael E. Archenbronn
*Counsel for Appellant*